IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-03976-PAB

ALEX ORLANDO ALFARO ORELLANA,

    Petitioner,

v.

KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
PAMELA BONDI, U.S. Attorney General,
TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement,
ROBERT HAGAN, Director of the Denver Field Office, U.S. Immigration and Customs Enforcement, and
JUAN BALTAZAR, Warden, Denver Contract Detention Facility,

    Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Alex Orlanda Alfaro Orellana's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Docket No. 1. Respondents filed a response. Docket No. 12. Petitioner filed a reply. Docket No. 14.

**I. BACKGROUND**[1]

Petitioner is a citizen of El Salvador. Docket No. 1 at 1, ¶ 1. He allegedly entered the United States without inspection on or about January 25, 2008.[2] *Id.*

---

[1] The following facts are undisputed unless otherwise stated.
[2] Petitioner states that the government alleges he entered the United States without inspection on or about January 25, 2008. Docket No. 1, ¶ 1. However, petitioner does not provide any citation to where the government made this allegation. *Id.* Respondents claim that petitioner "entered the United States without inspection or admission on an unknown date." Docket No. 12 at 8.

Petitioner was not encountered by immigration officers upon entering the United States. *Id.* at 6, ¶ 26.  On November 16, 2025, petitioner was arrested in Garfield County, Colorado for driving under the influence.  Docket No. 12-1 at 3, ¶ 8.  Petitioner has no criminal convictions.  Docket No. 1 at 7, ¶ 29.  On the date of his arrest, November 16, 2025, Immigration and Customs Enforcement ("ICE") officials encountered petitioner and determined that he did not possess documentation authorizing his presence in the United States.  Docket No. 12-1 at 3, ¶ 9.  On November 16, 2025, ICE issued a Notice to Appear, initiating removal proceedings under 8 U.S.C. § 1229a.  *Id.* at 4, ¶ 11.  The Notice to Appear charged petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).[3]  *Id.*  Respondents claim that petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(2)(A).  Docket No. 12 at 8.

    On December 1, 2025, petitioner had an initial hearing in his removal proceedings before an immigration judge where he requested time to hire an attorney.  Docket No. 12-1 at 4, ¶ 12.  On December 17, 2025 petitioner and his attorney appeared before the immigration judge for a master calendar hearing.  *Id.*, ¶ 14.  Upon request, petitioner was granted additional time to prepare his case and another hearing was scheduled for January 12, 2026.  *Id.*  Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado.  Docket No. 1 at 7, ¶ 30.  Petitioner has not had a bond hearing.  *Id.*; *see generally* Docket No. 12-1.

---

[3] In her declaration, ICE Deportation Officer Irma Quinones claims that the Notice to Appear charged petitioner with being deportable from the United States pursuant to 8 U.S.C. § 182(a)(6)(A)(i).  Docket No. 12-1 at 4, ¶ 11.  The Court presumes this was a typographical error, as 8 U.S.C. § 1182(a)(6)(A)(i) governs the inadmissibility of noncitizens, while 8 U.S.C. § 182(a)(6)(A)(i) does not exist.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).

Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Docket No. 1. Petitioner brings a claim for Violation of Substantive Due Process (Count I); a claim for Violation of Procedural Due Process (Count II); a claim for Violation of the Immigration and Nationality Act (the "INA") under 8 U.S.C. §§ 1225 and 1226 (Count III); and a Violation of the INA under *Bautista* (Count IV). *Id.* at 13-19. Petitioner seeks a declaration that 8 U.S.C. § 1226(a) governs his detention, a Writ of Habeas Corpus ordering respondents to release petitioner or to provide him with a bond hearing within seven days, an order under the All Writs Act, 28 U.S.C. § 1651(a), that he not be transferred outside the District of Colorado, and attorney's fees. *Id.* at 19-20. On December 12, 2025, Magistrate Judge N. Reid Neureiter issued a minute order pursuant to the All Writs Act prohibiting respondents from removing petitioner from the District of Colorado. Docket No. 4.

## II. ANALYSIS

The parties disagree on which statutory scheme controls petitioner's detention. Petitioner contends that his detention should be controlled by 8 U.S.C. § 1226 because § 1226 applies to the detention of noncitizens, like petitioner, "who have entered without inspection and are encountered in the United States years after their initial entry." Docket No. 1 at 9-10. ¶ 38. Because he believes that § 1226 applies, petitioner argues that respondents must release him or provide him a bond hearing. *See id.* at 20. Respondents, however, contend that 8 U.S.C. § 1225(b)(2)(A) applies to petitioner, and petitioner is therefore not entitled to a bond hearing and is subject to mandatory detention. Docket No. 12 at 9-14.

The INA "contemplates two detention regimes for noncitizens pending removal proceedings," one controlled by § 1225 and one controlled by § 1226. *Hernandez v.*

*Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025) (citation omitted). Section 1225 mandates detention pending removal proceedings, providing that, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). Unless certain exceptions are present, as provided for in §§ 1225(b)(2)(B) and (C), § 1225 "mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies." *Hernandez*, 2025 WL 2996643, at *3. Section 1226, on the other hand, does not mandate detention, providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226(a)(2), the Attorney General has the discretion to release a noncitizen on bond while removal proceedings are pending. 8 U.S.C. § 1226(a)(2). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

### A. Count III: Violation of the INA under 8 U.S.C. §§ 1225 and 1226

Respondents note that the Court has previously rejected respondents' arguments on the interpretation of 8 U.S.C. §§ 1225 and 1226 in *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019 (D. Colo. Dec. 18, 2025). Docket No. 12 at 17 n.3. Respondents request that the Court reconsider the arguments. *Id.* However, respondents do not raise any significant new arguments that were not already addressed in *Florez Marin*. *Compare* Docket No. 12, *with Florez Marin*, 2025 WL 3677019.

Respondents argue that *Jennings* supports concluding that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who entered without inspection and remain

4

unlawfully present. Docket No. 12 at 3-7. "[A] proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [petitioner], who has been residing in the United States for more than two years." *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720-RMR, 2025 WL 2962908, at *5 (D. Colo. Oct. 17, 2025) (citation omitted) (collecting cases). The Court disagrees with respondents' contention that *Jennings* supports a different conclusion. The Supreme Court in *Jennings* held that, "[i]n sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)" and that "[i]t also authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under [ ] § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis added). Therefore, *Jennings* distinguishes between noncitizens seeking admission, who are subject to § 1225, and noncitizens who are already present in the country, who are subject to § 1226.

Respondents argue that the text of 8 U.S.C. §§ 1225 and 1226 supports detention without bond. Docket No. 12 at 10-14. The Court is unconvinced. In fact, respondents' argument that § 1225(b)(2)(A) applies to noncitizens already residing in the United States is contrary to the plain language of § 1225. "The weight of authority interpreting § 1225 has recognized that for section 1225(b)(2)(A) to apply, several conditions must be met – in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *See Loa Caballero v.*

5

*Baltazar,* No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (internal quotation and citation omitted) (quoting 8 U.S.C. § 1225(b)(2)(A)).  Section 1225(b)(2)(A)'s requirement that an applicant for admission be "seeking admission" "requires that the applicant must be presently and actively seeking lawful entry into the United States."  *Id.*  Therefore, noncitizens who "have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission" as defined in § 1225(b)(2)(A).  *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025).  While these kinds of noncitizens, like petitioner, "may technically be a noncitizen present in the United States who has not been admitted [making] them an applicant for admission," that does not mean that they are "seeking admission."  *See id.* (internal quotations omitted).  Respondents point to § 1225(b)(1)(A)(i) for the proposition that "both those just arriving in the United States *and* those who entered without inspection" are subject to § 1225.  *See* Docket No. 12 at 10.  Section 1225(b)(1)(A)(i) provides:

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review.

8 U.S.C. § 1225(b)(1)(A)(i).

Respondents argue that § 1225(b)(1)(A)(i)'s reference to § 1225(b)(1)(A)(iii), which in turn references noncitizens who have "*already* been residing here and are inadmissible," demonstrates that § 1225 is applicable to noncitizens like petitioner.  *See* Docket No. 12 at 10.  However, § 1225(b)(1)(A)(i) and (iii) are "better understood as carve outs for the 'certain other aliens' that do not fall into § 1225's otherwise general application to *arriving* [non]citizens."  *Hernandez*, 2025 WL 2996643, at *6 (citing 8

U.S.C. § 1225(b)(1)).  Respondents also rely on 8 U.S.C. § 1225(a)(3) for the proposition that a noncitizen can seek admission simply by meeting the definition of an applicant for admission.  Docket No. 12 at 11.  Section 1225(a)(3) states that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."  8 U.S.C. § 1225(a)(3).  Again, respondents' argument fails to account for the fact that, in order for § 1225(b)(2)(A)'s mandatory detention provision to apply, it is not enough for a noncitizen to be an applicant for admission; he must also be seeking admission.  Furthermore, to the extent respondents argue that an applicant for admission is necessarily seeking admission, "[t]he 'otherwise seeking admission' language is simply a catch-all provision to describe individuals seeking admission and subject to inspection who may not fit the definition of 'applicant for admission,' such as a person not currently present in the United States."  See *Loa Caballero*, 2025 WL 2977650, at *6 n.4.

Finally, respondents argue that their position is supported by legislative history.  Docket No. 12 at 14-16.  The Court disagrees.  Respondents contend that Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") to stop non-citizens who had entered without inspection from having greater procedural and substantive rights in deportation proceedings than noncitizens who presented themselves at a port of entry for inspection.  *Id.* at 15.  However, "when Congress enacted the IIRIRA, it 'did not fully disrupt the old system, including the system of detention and release' on bond."  *Hernandez*, 2025 WL 2996643, at *7 (quoting *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) ("Congress' concern about adjusting the law in some respects to reduce inequities in

7

the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting all inadmissible noncitizens to mandatory detention, . . . a seismic shift in the established policy and practice of allowing discretionary release under Section 1226(a) – the scope of which Congress did not alter.") (internal quotations omitted)).

Contrary to respondents' assertion, Congress's amendment of § 1226 provides further evidence that petitioner's case should be governed by § 1226 rather than by § 1225(b)(2)(A).  *See* Docket No. 1 at 13-14.  In January 2025, Congress amended § 1226, adding § 1226(c)(1)(E).  *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  Section 1226(c)(1)(E) provides that the "Attorney General shall take into custody any alien who –"

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E).  Section 1226(c)(1)(E) mandates detention for a narrow category of noncitizens who both entered the country without inspection and were later arrested for, committed, or admitted to committing one of a list of enumerated crimes.  8 U.S.C. § 1226(c)(1)(E).  This provision would be meaningless if noncitizens already residing in the United States were all subject to mandatory detention under § 1225(b)(2).  *See Salcedo Aceros*, 2025 WL 2637503, at *10 ("If Congress amended

8

Section 1226 to create mandatory detention for certain inadmissible noncitizens, it follows that those noncitizens were not already subject to mandatory detention.").

For the foregoing reasons, "federal district courts have overwhelmingly rejected Respondents' broad interpretation of section 1225(b)(2)." *See Loa Caballero*, 2025 WL 2977650, at *5 (internal quotation and citation omitted) (collecting cases). Just as it did in *Florez Marin*, the Court agrees with the weight of the authority finding that petitioner's detention is controlled by § 1226(a) and not by § 1225(b)(2)(A).

Accordingly, the Court finds that petitioner is being detained under 8 U.S.C. § 1226(a). Because there is no evidence that petitioner has been provided a bond hearing, his current detention violates § 1226(a). The Court will grant the habeas petition on Counts III and IV and order respondents to provide petitioner a bond hearing within seven days of the date of this order.[4] While petitioner alternatively requests that the Court order his release, petitioner provides no explanation for why that is a more appropriate remedy than ordering a bond hearing. *See generally* Docket No. 1. Thus, in light of the fact that § 1226(a) authorizes detention, the Court finds that a bond hearing is a more appropriate remedy.

### B. Additional Relief

In addition to being granted a bond hearing, petitioner requests that the Court declare that 8 U.S.C. § 1226(a) governs petitioner's detention. A "declaratory relief claim is moot if the relief would not affect the behavior of the defendant toward the

---

[4] Because the Court will grant the habeas petition on the basis of Counts III, it will not reach Counts I and II, petitioner's due process claims, or Count IV, petitioner's *Bautista* claim. See *Hernandez*, 2025 WL 2996643, at *8 ("the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a)").

plaintiff." *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted). However, such claims are not moot if "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation and citations omitted). A declaration that petitioner's detention was unlawful would not affect respondents' behavior toward petitioner now that the Court has ordered respondents to provide petitioner with a bond hearing. *See Vaupel v. Ortiz*, 244 F. App'x 892, 896 (10th Cir. 2007) (holding that petitioner's declaratory claims for relief were moot after petitioner's release and deportation, declining "to issue an advisory opinion regarding the legality of [petitioner's] detention, because a declaratory judgment on that question would have no meaningful effect on the Department of Homeland Security's future conduct towards him") (internal quotation, alteration, and citation omitted).

As for petitioner's request for attorney's fees, the Court will not consider the request because petitioner fails to comply with the Local Rules of the District of Colorado. A motion for attorney's fees must be filed in accordance with D.C.COLO.LCivR 54.3. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

### III. CONCLUSION

Therefore, it is

**ORDERED** that Alex Orlando Alfaro Orellana's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 is **GRANTED in part**. It is further

**ORDERED** that respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven days** of the date of this Court's order. It is further

**ORDERED** that within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED December 22, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge